IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Crim. No. 09-105-SLR ) |
| THEODORE ROLLINS, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM ORDER**

At Wilmington this 17th day of February, 2011, having considered defendant's motion to withdraw his guilty plea and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 39) is denied, for the reasons that follow:

1. **Background.** On November 3, 2009, a grand jury returned a one count indictment and notice of forfeiture against defendant Theodore Rollins charging him with possession of a firearm by a convicted a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c). (D.I. 9) On January 14, 2010, defendant filed a motion to suppress. (D.I. 13) An evidentiary hearing was scheduled for February 22, 2010. (D.I. 16)

2. Subsequently, plaintiff and defendant's attorney engaged in discussions, resulting in a one-count information and notice of forfeiture being filed on February 22, 2010. (D.I. 18) Although the court was not advised that defendant had accepted a plea agreement or wanted to cancel the evidentiary hearing, the parties appeared for a change of plea hearing on February 22, 2010. (D.I. 43 at 2, 7-8,) Further confusion

ensued when, at the commencement of the hearing, counsel for plaintiff advised that defendant was having "some second thoughts" and deferred to defense counsel to explain. Specifically,

> **Defense attorney:** Your Honor, if I may, we have engaged in a good faith back and forth on this case. Your Honor received what looks like an information. We added a paragraph before Your Honor came out which would have meant the government was agreeing to dismiss the indictment in this case and proceed by information on another charge, a non-mandatory charge. I conveyed several things back and forth. In all fairness, I think two-thirds of the things that I requested were granted, and we are here today. [Defendant] is no longer speaking to me, literally, so I don't really know what else to say.
>
>       *   *   *
>
> **The court:** All right. [Defendant], you have a constitutional right to be represented by competent counsel. You do not have the right to select your counsel. I don't know what your concerns are right now. If you would like to share them with me today, I certainly want to listen to you and decide with your help how to proceed, because we do need to resolve this case one way or another. Would you care to address the court? You can stand there if you want as long as we can hear you.
>
> **Defendant:** Me and the way [defense attorney] - - I explained stuff that - - I explained case numbers and all that to [defense attorney]. I told him how I wanted to proceed. It seems like he don't want to do his job. He threatened me. I feel threatened with [defense attorney] because every time we talk and discuss, it's like he basically wanting me to take the plea. Like, take it, take it, take it, by saying you oh, you can get two and three years here, 15 years here, all that. I feel scared because I've got a five-month old baby I ain't seen yet. I seen him when he was born and all that. I ain't seen him. And I'm innocent. I know I'm innocent. I can't - - I just can't go on.
>
> **The court:** Well, you certainly have a right to a trial and I'm certainly prepared. That's what I do. I try cases. I'm certainly willing to set a trial date in this case. I don't know - - I mean, you are risking - - there are certain risks with going to trial on the charge that the government has presented because if found guilty, apparently - - and I, frankly, wasn't prepared to have this discussion today - - apparently, there is a minimum mandatory term of incarceration?

2

**Prosecutor:** The government does believe that [defendant] is eligible for the ACCA[1] penalty if he were to go to trial on the 922(g) charge. The plea offer involved him pleading to an information charging a stolen weapon, which has a maximum term of ten years.

**The court:** All right.

**Defendant:** I don't understand that because by saving my life, I should have just died in the car instead of just going on here. I should have just died. Instead of me taking the firearm to save my life, I should have just died, honestly. I'm sitting here for nothing. My life, my life.

**The court:** Well, I don't know enough about the case to be giving you advice. I just know that in general, the government has the power through the grand jury to charge you with offenses that are consistent with the facts as the government sees it. And we have an awful lot of cases here involving folks [who] have prior convictions that are found in possession of a gun. I'd say at least 50 percent of those people say that [they] have the gun in order to protect themselves, that they did not intend to do any harm with it. It's still a crime under federal law, and I am obligated to enforce the federal law. So the important information that I give you today is that you have the right to go to trial. You are risking a minimum mandatory term of incarceration. With a minimum mandatory term of incarceration, I don't have the authority to give you less than that term.

\*     \*     \*

So you need to tell me what you want me to do at this point and then I

---

[1]The Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) provides,
> [i]n the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under § 922(g).

3

> will talk to [defense attorney] and [prosecutor] again. If you want to take a minute and gather your thoughts while I talk to [defense attorney] and [prosecutor], I want you to have that - -
>
> **Defendant:** I'm explaining stuff about my life. I've been through a lot of stuff in life. I've been stabbed seven times, beat with a crowbar. I've down seen so much death. I've seen just a lot. I've got a lot on my mind. I'm very, very depressed. I'm very depressed, very.
>
> **The court:** All right. And that's difficult. I'm sure that's difficult for you to understand, but the sorts of facts that you are describing to me aren't necessarily a defense to the crime. They're factors to be taken into consideration in terms of what a punishment should be for a crime. I think what I'm going to do is I'm going to take a short break, to let [defendant] get his thoughts together.

(D.I. 43 at 2-6)

3. During the recess, the court was informed that defendant decided to enter a plea of guilty to the information. (*Id.* at 8) The hearing proceeded accordingly. Defendant was placed under oath to answer the court's inquiries regarding, inter alia, his mental state, educational background and drug and alcohol use. (*Id.* at 9 - 11) In response to a question concerning defendant's satisfaction with the representation provided by his attorney, defendant unequivocally stated "Yes, ma'am."[2]

4. Next, the court reviewed the terms of the plea agreement (paragraph by paragraph), the sentencing process in federal court and defendant's right to plead not guilty and proceed to trial (including the government's burden of proof).[3] (*Id.* at 11-16;

---

[2] The court asked: "Are you fully satisfied with the counsel, representation, and advise given to you by [defense counsel] as your attorney in this case?" (*Id.* at 11)

[3] The plea agreement provided, in part, the government's agreement to dismiss the 18 U.S.C. § 922(g) charge in the indictment and, in turn, defendant agreed not to request a sentence that fell below the top of the applicable Sentencing Guideline range as determined by the court and permitted the government to seek an upward variance

4

17-18; 18-20) While inquiring into the circumstances that made defendant feel a plea of guilty was appropriate, the court explained:

> **The court:** Well, let me ask you the question. Did you possess the Colt .45 revolver that is described in the information?
>
> **Defendant:** Yes.
>
> **The court:** Was that - -
>
> **Defendant:** Yes.
>
> **The court:** Yes. And, did you know or have reason to believe that it was a stolen firearm.
>
> **Defendant:** Yes, I did take it. I didn't know it was stolen.
>
> **Defense attorney:** We have expanded to the very limits of 922(j) for this case, Your Honor, so he is, in fact the person who - -
>
> **The court:** All right. Well, let me say this. You had possession of this gun. You didn't buy it legally; is that correct?
>
> **Defendant:** Yes.

(*Id.* at 20-21)

5. The prosecutor then described the facts the government would be prepared to prove had the case gone to trial.[4] (*Id.* at 21-24) After the prosecutor concluded, the

---

from that range. (D.I. 19 ¶¶ 6-7)

[4]Significantly, with respect to the stealing of the weapon, the prosecutor stated:
> [Defendant] stated to the officers and later to an ATF special agent that he obtained the gun about a half an hour before he was stopped by the officers. He stated that he got into the backseat of someone else's car because he was going to negotiate a drug sale with the car's occupants. He noticed the gun under a t-shirt in the back seat and took it and tucked it into his pants because he was afraid the drug buyers intended to use it to rob him. He then left the car with the gun.

(D.I. 43 at 22)

5

court asked defendant what plea he would now enter to the charge, to which, defendant replied "guilty."[5] (*Id.* at 24)

6. The court accepted the guilty plea and scheduled sentencing for June 2, 2010. (D.I. 20) The sentencing was continued to July 27, 2010 when defendant's unopposed motion to continue was granted. (D.I. 22) Thereafter, defendant wrote a pro se letter to the court seeking to discharge his attorney and withdraw his guilty plea. (D.I. 25) An in-person conference was conducted on July 27, 2010, wherein defendant's pro se request for new counsel was granted. (D.I. 28)

7. On August 5, 2010, new counsel was appointed and, subsequently, renewed defendant's motion to withdraw his guilty plea. Defendant asserts his innocence (because he denies knowing the firearm was stolen) and that his decision to plead guilty was prompted by ineffective assistance of counsel. (D.I. 32, 39) He asserts that his attorney stated, incorrectly, that he could argue for a downward departure on mental health grounds.

8. Plaintiff opposes the motion, contending that defendant has not made a meaningful assertion of innocence and cannot support his claim that the plea resulted from ineffective assistance of counsel. (D.I. 42)

9. **Standard of Review.** A defendant may withdraw a court-accepted guilty plea only if "the defendant can show a fair and just reason for requesting the withdrawal."

---

[5]Defendant pointed out that the prosecutor had misstated his exact location, i.e., the prosecutor stated that defendant was located on Ninth Street, while defendant said he "was locked up at Eighth and Lombard." (*Id.* at 23) The court concluded this was not a "material difference" in the statement of facts. (*Id. at 24*)

Fed.R.Crim.P. 11(d)(2)(B). The guilty plea cannot be withdrawn on a "whim." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).

    10. The Third Circuit has explained the standard for withdrawal as follows:

> A district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.

*Id.*

    11. Where the defendant alleges that counsel was ineffective in permitting him to plead guilty, the Third Circuit's standard is as follows:

> A court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if: (1) defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms; and (2) defendant shows that he suffered sufficient prejudice from his counsel's errors.

*Id.* at 253-54. The burden of demonstrating a "fair and just" reason falls on the defendant, and that burden is substantial. *United States v. Hernandez*, No. 09-1078, 2010 WL 1803819, *2 (3d Cir. May 6, 2010).

    12. With respect to the first factor, "[b]ald assertions of innocence . . . are insufficient to permit a defendant to withdraw [his] guilty plea." *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001). "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Id.* Once a defendant has pleaded guilty, he "must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *United States v.*

*Jones*, 979 F.2d 317, 318 (3d Cir. 1992), *superseded by statute on other grounds as stated in, United States v. Roberson*, 194 F.3d 408, 417 (3d Cir. 1999).

13. Considering the first factor necessary to withdraw a guilty plea against the record of the plea hearing, the court finds that defendant's claim of innocence is unpersuasive. Significantly, he agreed with the government's factual basis for the plea in all respects, except for his precise location. Further, in response to the court's inquiries, he admitted that he took the gun; that very admission demonstrates that he stole the gun.[6] (D.I. 43 at 21) In sum, defendant has failed to present any facts to substantiate his bare-bone assertion of innocence.

14. With respect to the second factor, defendant claims as his reason to withdraw the guilty plea the poor legal advice given by his former attorney. Defendant's position, however, is undermined by his own statements at the change of plea hearing when he specifically stated that he was satisfied with his attorney's representation. Moreover, the exchange between the court and defendant reflect that defendant had ample opportunity to reject his attorney's advice, request new counsel and to cancel the plea hearing. Instead, after discussing his concerns with the court and being afforded a break to confer with counsel, defendant agreed to accept his attorney's advice and to enter a plea of guilty. With respect to the quality of the legal advice given by counsel, the court pointed out that, by negotiating a plea that eliminated the minimum mandatory term of incarceration, his attorney had performed competently. (D.I. 43 at 6)

---

[6]Whether the individual from whom defendant stole the gun was in legal possession of the gun or not is legally immaterial.

8

15. Relatedly, defendant's claim that his attorney's advice regarding a downward departure motion constitutes ineffective assistance of counsel is uncompelling in light of the plea hearing record. Specifically, the court thoroughly reviewed the plea agreement and defendant acknowledged an understanding and acceptance of same. (*Id.* at 12, 15-18)

16. Finally, the third factor, whether the government has demonstrated that it would be prejudiced by the withdrawal of a guilty plea, is inconsequential. *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995) (government need not show such prejudice where a defendant has failed to demonstrate that the other factors support a withdrawal of the plea).

17. A sentencing hearing is scheduled to commence on **Thursday, April 7, 2011 at 4:30 p.m.** in courtroom No. 4B, on the fourth floor of the J. Caleb Boggs Federal Building, 844 King Street, Wilmington, Delaware.

_____
United States District Judge